# In the United States Court of Federal Claims

No. 10-204 C

(Filed April 2, 2014)

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| UNIGLOBE GENERAL TRADING & CONTRACTING CO., W.L.L., *Plaintiff*, v. THE UNITED STATES, *Defendant*. | Contract; Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (Supp. V 2011); One-Year Statute of Limitations for Challenging a Contracting Officer's Final Decision, 41 U.S.C. § 7104(b)(3). |

* * * * * * * * * * * * * * * * * * * *

*Geoffrey W. Veith*, Philadelphia, PA, for plaintiff.

*James Sweet*, United States Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, and *Steven J. Gillingham*, Assistant Director, Washington, DC, for defendant.

---

## OPINION

---

**BUSH**, *Senior Judge*.

Now pending before the court is defendant's motion for partial dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The amended complaint, like plaintiff's original complaint, alleges that the United States Department of the Army (Army) breached three contracts with Uniglobe for the lease of vehicles to be used in support of Operation Iraqi Freedom in Kuwait. The court previously dismissed a portion of Uniglobe's original complaint alleging breach of one of Uniglobe's

three contracts with the Army.  *See Uniglobe Gen. Trading & Contracting Co. v. United States*, 107 Fed. Cl. 423 (2012) (*Uniglobe I*).  Defendant's pending motion, filed April 22, 2013, seeks to dismiss a portion of the amended complaint alleging breach of the same contract at issue in *Uniglobe I*.  After three rounds of supplemental briefing, which were finally concluded on February 7, 2014, defendant's motion is now ripe for decision.  Oral argument was neither requested by the parties nor deemed necessary by the court.  Because the court concludes that it lacks jurisdiction over a portion of Uniglobe's amended complaint, defendant's motion for partial dismissal is granted in part and denied in part.

# BACKGROUND[1]

        A detailed description of the factual background and procedural history of this case is provided in *Uniglobe I*.  The court will summarize below only those facts most pertinent to the motion currently before the court.

        In this case, plaintiff Uniglobe General Trading and Contracting Company, W.L.L. (plaintiff or Uniglobe) seeks damages stemming from the government's alleged breach of three separate contracts for the lease of vehicles in Kuwait.  On September 27, 2012, the court granted defendant's motion to dismiss Uniglobe's claims based on one of those contracts under RCFC 12(b)(1) because the court concluded that (1) Uniglobe had failed to submit that claim to the contracting officer within six years of the date on which that claim first accrued as required by § 7103(a) of the Contract Disputes Act (CDA), 41 U.S.C. § 7103(a) (Supp. V 2011), and (2) Uniglobe did not file suit in this court within one year of receiving the contracting officer's final decision on that claim as required by § 7104(b)(3) of the CDA, 41 U.S.C. § 7104(b)(3) (Supp. V 2011).[2]  *See Uniglobe I*, 107 Fed. Cl. at

---

        [1]/  The facts recounted in this opinion are taken from the amended complaint and the parties' submissions in connection with defendant's pending motion for partial dismissal. Except where otherwise noted, the facts recited here are undisputed.

        [2]/  On January 4, 2011, Congress amended the CDA and moved its provisions to sections 7101 through 7109 of Title 41 of the United States Code.  Pub. L. No. 111-350, 124 Stat. 3677 (2011).  The amendment did not make any substantive changes to the sections of the CDA at issue in this case.  In *Uniglobe I*, the court referred to the section numbers that were superseded by the January 2011 amendments to the CDA because the parties in *Uniglobe I* referenced those superseded section numbers in their briefing.  *See* 107 Fed. Cl. at 425 n.2.  By contrast, the (continued . . .)

2

432-35.  Uniglobe subsequently filed an amended complaint in which it attempted to cure the jurisdictional defects in its original complaint.  The government now moves to dismiss a portion of the amended complaint relating to the same claim that was at issue in defendant's previous motion for partial dismissal.  The sole basis for the government's pending motion for partial dismissal is that Uniglobe did not file suit in this court within one year of receiving the contracting officer's final decision with respect to that claim.

## I.     Factual Background

Uniglobe is a Kuwaiti corporation with its principal place of business in Kuwait.  Am. Compl. ¶ 4.  In 2003, Uniglobe entered into three contracts with the Army, under which Uniglobe agreed to lease various types of vehicles to the Army to be used in support of Operation Iraqi Freedom.  *Id.* ¶¶ 6-8 & Exs. A-C.  Under those contracts, the Army leased from Uniglobe:  (1) a number of Chevrolet Suburbans under Contract DABM06-03-P-0363 (the 363 contract); (2) six trucks under Contract DABM06-03-P-0432 (the 432 contract); and (3) five Caterpillar bucket loader construction vehicles (Caterpillars) under Contract DABM06-03-P-0442 (the 442 contract).  *Id.* ¶¶ 44, 63, 88 & Exs. A-C.  Because defendant's pending motion for partial dismissal pertains solely to the 442 contract, the court will limit the remainder of its discussion of the facts to only those relevant to the 442 contract.

### A.     The 442 Contract

The 442 contract provided that the Army would lease five Caterpillars from Uniglobe for a six-month period from March 31, 2003 to October 1, 2003.  Am. Compl. Ex. C at 2-3.  Under the contract, lease fees for the Caterpillars were to be determined in accordance with monthly rates, which were to accrue from the beginning of the contract or the delivery of the vehicles, and would continue until the expiration or termination of the contract.  *Id.* Ex. C at 3 (incorporating by full

---

parties' briefs in connection with defendant's pending motion for partial dismissal reference the current version of the CDA.  Accordingly, the court refers to the current version of the CDA in this opinion.

text Federal Acquisition Regulation (FAR) 52.208-4(b)).[3]  The contract also
provided, however, that lease fees "shall not accrue for any vehicle that the
Contracting Officer determines does not comply with the Condition of Leased
Vehicles clause of this contract or otherwise does not comply with the
requirements of this contract, until the vehicle is replaced or the defects are
corrected."  *Id.* Ex. C at 4 (incorporating FAR 52.208-4(c)).  The "Condition of
Leased Vehicles" clause of the 442 contract provided as follows:

> Each vehicle furnished under this contract shall be of
> good quality and in safe operating condition, and shall
> comply with the Federal Motor Vehicle Safety Standards
> (49 CFR 571) and State safety regulations applicable to
> the vehicle.  The Government shall accept or reject the
> vehicles promptly after receipt.  If the Contracting
> Officer determines that any vehicle furnished is not in
> compliance with this contract, the Contracting Officer
> shall promptly inform the Contractor in writing.  If the
> Contractor fails to replace the vehicle or correct the
> defects as required by the Contracting Officer, the
> Government may (a) [b]y contract or otherwise, correct
> the defect or arrange for the lease of a similar vehicle and
> shall charge or set off against the Contractor any excess
> costs occasioned thereby, or (b) [t]erminate the contract
> under the Default clause of this contract.

*Id.* (incorporating FAR 52.208-5).  The "Payment" provision of the
contract's terms and conditions required the government to pay only for
those items actually accepted by the government.  *Id.* Ex. C at 5
(incorporating FAR 52.212-4(i)).

In addition to setting forth the terms and conditions regarding the
government's payment of lease fees for the Caterpillars, the 442 contract
required the government to compensate Uniglobe for "loss of or damage to .
. . [l]eased [Caterpillars], except for (i) normal wear and tear and (ii) loss or

---

[3]/  All references to the FAR in this opinion are to the 2012 version of Title 48 of the
Code of Federal Regulations.

damage caused by the negligence of the Contractor, its agents, or employees." Am. Compl. Ex. C at 7 (incorporating FAR 52.228-8(a)(1)); *see id.* ¶ 89. The contract further provided that the government was to assume the risk of loss of or damage to leased Caterpillars upon delivery. *Id.* ¶ 89 & Ex. C at 5-6 (incorporating FAR 52.212-4(j)).

Finally, the 442 contract provided that it would be "subject to the Contract Disputes Act of 1978, as amended," and that the parties' failure to reach an agreement with respect to any claim under the contract should be resolved in accordance with FAR 52.233-1. Am. Compl. Ex. C at 5-6.

### B. The Parties' Performance under the 442 Contract

In accordance with the terms of the 442 contract, Uniglobe delivered five Caterpillars to an Army encampment in Kuwait on April 1, 2003. Am. Compl. Ex. J at 1. On April 10, 2003, the Army contacted Uniglobe to express its concerns regarding the condition of four of those vehicles. *Id.* ¶ 91 & Ex. J at 1. In response to the Army's concerns, Uniglobe delivered four replacement Caterpillars to the encampment the same day and removed two of the original vehicles for off-site maintenance, leaving the Army with a total of seven Caterpillars at the encampment. *Id.* ¶¶ 92-94 & Ex. J at 1-2.

In May 2003, the Army informed Uniglobe that it was cancelling the 442 contract. Am. Compl. ¶ 98 & Ex. J at 2. Uniglobe sent field drivers to the Army encampment on May 25, 2003 to recover the seven Caterpillars still in the Army's possession, but two of the vehicles could not be located at that time. *Id.* ¶¶ 99-100 & Ex. J at 2. The two missing Caterpillars were subsequently recovered from Camp Arifjan and Camp Virginia in Kuwait in September and October 2003, respectively. *Id.* ¶ 101 & Ex. J at 2, 19-21; Pl.'s Second Supplemental Br. Ex. B at 3. The Caterpillar recovered from Camp Virginia had been transported by Army personnel to Iraq and returned to Kuwait in August 2003, and was so severely damaged by October 2003 that its removal from Camp Virginia required the use of salvage equipment. Am. Compl. ¶ 102 & Ex. J at 2, 19-21; Def.'s Mot. Ex. B at 2; Pl.'s Second Supplemental Br. Ex. B at 34-35.

### C. Uniglobe's 2003 Lease Fees Claim

5

On November 30, 2003, Dr. Iesa M. Jasem, Uniglobe's President and Chief Executive Officer, submitted to the Army's contracting command several invoices demanding payment of lease fees in the amount of 29,313.33 Kuwaiti dinar (KWD)[4] for Caterpillars leased to the government under the 442 contract (the 2003 Lease Fees Claim).[5]  *See* Def.'s Mot. at 2 & Ex. A.

In a January 29, 2004 Determination and Findings (D&F), contracting officer Michelle L. Weinert concluded that Uniglobe was entitled to receive only KWD 7200 in additional lease fees under the 442 contract.  *See* Def.'s Mot. Ex. B at 3.  Ms. Weinert reasoned that the Army had rejected all but one of the five Caterpillars originally delivered by Uniglobe, as well as all of the replacement Caterpillars delivered by Uniglobe, because they were determined to be in poor and unacceptable condition.  *Id.* at 1.  Ms. Weinert therefore concluded that Uniglobe had failed to comply with the "Condition of Leased Vehicles" clause of the 442 contract and "shall only receive payment for three (3) months [of lease fees] at the rate of [KWD] 2,400.00/month, which is the rate contained in the [442] contract.  This [KWD] 7,200.00 would cover the cost of the one (1) bucket loader taken to Iraq and returned in the month of August 2003."  *Id.* at 3.  However, Ms. Weinert further concluded that "since Uniglobe has already received [KWD] 15,520.000 [in lease fees under the 442 contract], the [KWD] 7,200.000 shall not be paid and [Uniglobe is] not entitled to any other payments under this contract because poor equipment was provided."  *Id.*

On February 18, 2004, Anthony Adolph, legal counsel for the Army, issued a "Legal Review" of Ms. Weinert's D&F in which he characterized the D&F as a "final decision on claims against the government arising from bucket loader Contract DABM06-03-P-0442."  Def.'s Supplemental Br. Ex. 1, Attach. 2 at 1.  Finding the D&F to be "legally sufficient," Mr. Adolph stated that "[i]t is clear from the facts that the Government did not accept the equipment as provided by Uniglobe," and therefore "only a portion of [Uniglobe's] claims [for lease fees

---

[4]/  The Kuwaiti dinar (KWD) is the official currency of Kuwait.  The exchange rate during the relevant time period was 0.28 KWD for each U.S. dollar.  *Uniglobe I*, 107 Fed. Cl. at 426 n.4; Def.'s Mot. Exs. E at 3, G at 2.

[5]/  Dr. Jasem is sometimes referred to in invoices as "Dr. Iesa M. Jassem."  *See* Am. Compl. Ex. F at 4-7, 15; Def.'s Mot. Ex. A at 1-4, 12.

under the 442 conract] had merit[] and were payable." *Id.*  In that regard, Mr. Adolph concurred with Ms. Weinert's determination that Uniglobe was entitled to receive only KWD 7200 in lease fees under the 442 contract, and further stated that "[a]s a result of the [KWD] 15,520 overpayment [of lease fees to Uniglobe], Uniglobe has a debt to the Government in the amount of [KWD] 8,320 ([KWD] 15,520 – [KWD] 7,200 = [KWD] 8,320)." *Id.* at 2.  Mr. Adolph concluded by stating that "[c]ollection action shall be initiated to recover the [KWD] 8,320 owed to the Government by Uniglobe." *Id.*

On February 23, 2004, Erin Quinn of the Army's contracting command e-mailed Uniglobe a document titled "Amendment of Solicitation/Modification of Contract" (Contract Modification).  *See* Pl.'s Second Supplemental Br. Ex. B at 18-22.  This document, which was dated February 23, 2004 and prepared and signed by Ms. Weinert pursuant to FAR 53.243, indicated in a section titled "Description of Amendment Modification" that "the total contract value has been reduced to [KWD] 15,520 ($53,417.24)" and "[n]o further payments are to be made" as a result of the findings and conclusions made by Ms. Weinert in her January 29, 2004 D&F.  Def.'s Mot. Ex. C at 1, 4; Pl.'s Second Supplemental Br. Ex. B at 19, 22.  The Contract Modification restated Ms. Weinert's findings and conclusions with respect to Uniglobe's 2003 Lease Fees Claim nearly verbatim.  Def.'s Mot. Ex. C at 3-4; Pl.'s Second Supplemental Br. Ex. B at 21-22.  Additionally, echoing the language of Mr. Adolph's Legal Review, the Contract Modification stated that "[a]s a result of the [KWD] 15,520 overpayment [of lease fees to Uniglobe], Uniglobe has a debt to the Government in the amount of [KWD] 8,320 ([KWD] 15,520 – [KWD] 7,200 = [KWD] 8,320)," and therefore "[c]ollection action shall be initiated to recover the [KWD] 8,320 owed to the Government by Uniglobe."  Def.'s Mot. Ex. C at 3; Pl.'s Second Supplemental Br. Ex. B at 21.

### D.    Uniglobe's 2004 Repair Claim

On March 21, 2004, Uniglobe submitted to the Army's contracting command a claim under the 442 contract in the amount of KWD 24,282.59 to cover the cost of repairing the damaged Caterpillar that was recovered from Camp Virginia in October 2003 (the 2004 Repair Claim).  *See* Am. Compl. ¶ 14 & Ex. D; Def.'s Mot. Ex. D.  This claim did not seek damages for lease fees under the 442 contract.

Eighteen months later, on September 26, 2005, Major Rosiher Sibaja of the Army's contracting command sent an e-mail to a Uniglobe employee named Dina Quinto attaching a "Memorandum for Record," dated August 30, 2005, setting forth Major Sibaja's decision on Uniglobe's 2004 Repair Claim (the September 2005 Decision).[6]  *See* Def.'s Mot. Ex. E.  Major Sibaja's transmittal e-mail identified the attached Memorandum for Record as "my Contracting Officer[']s Final Determination" and asked Uniglobe, if it was "satisfied with the determination, [to] let me know by email, or by writing so on the document and faxing/emailing it back to me."  *Id.* at 1.  In the attached Memorandum for Record, Major Sibaja noted, under a heading titled "Description of Claim," that Uniglobe "submitted a claim on March 21[], 2004 . . . .  [r]equesting KWD 24,282.590 for damages to a Caterpillar 950E that was taken to Iraq and then returned to Kuwait." *Id.* at 2.  Major Sibaja also noted, in the same section, that Uniglobe had filed a previous claim for lease fees which the contracting officer had denied based on her determination that the Army had overpaid Uniglobe for the lease of the Caterpillars:

> The contractor has . . . previously been overpaid for the lease of the equipment.  The contract was cancelled due [to] the unsatisfactory equipment being delivered to [the] customer.  The contractor has previously filed a claim for lease charges against the equipment in this contract.  The contracting officer's final decision and legal opinion on this previous claim for lease charges is included in the support[ing] documents tab B.  The contractor was overpaid for equipment that the government had not accepted due to its poor condition.  These are overpayments for which the contractor still owes the US government KWD 8,320.

---

[6]/ In e-mail correspondence, Army personnel sometimes referred to Ms. Quinto as "Deena."  *See* Def.'s Mot. Ex. E at 1 (September 26, 2005 e-mail from Major Sibaja to "Deena Uniglobe"), G at 1 (October 23, 2005 e-mail from Major Sibaja to "Deena Uniglobe"); Def.'s Supplemental Br. Ex. 2 (October 26, 2006 e-mail to Lieutenant Colonel (LTC) Raymond Strother from "Deena Uniglobe" and signed by "Dina R. Quinto").

*Id.*

In a section of the attached Memorandum for Record titled "Final Decision," Major Sibaja stated that "the amount requested by [Uniglobe in the 2004 Repair Claim] is beyond the reasonable cost of the [damaged Caterpillar], and "[a] reasonable cost for this equipment is determined to be $40,000.00 which converts to KWD 11,200 at the current exchange rate of [0].28 KWD per [U.S. dollar]." Def.'s Mot. Ex. E at 2-3. Subtracting the lease fees overpayment of KWD 8320 referenced in Ms. Weinert's D&F, Major Sibaja determined that "[t]he total amount due the contractor is KWD 2,880." *Id.* at 3. Major Sibaja concluded by stating that "[t]his is the final decision of the Contracting Officer," and that Uniglobe could appeal the decision to the Board of Contract Appeals within ninety days or to the Court of Federal Claims within one year of receiving the decision. *Id.*

On October 23, 2005, Major Sibaja sent a second e-mail to Ms. Quinto at Uniglobe attaching a revised "Memorandum for Record," also dated August 30, 2005, setting forth Major Sibaja's revised determination with respect to Uniglobe's 2004 Repair Claim (the October 2005 Revised Decision). *See* Def.'s Mot. Ex. G. In his transmittal e-mail, Major Sibaja identified the attachment as his "revision of claim DABM06-P-0442" and asked Uniglobe to "respond with a[n] email or fax stating that you have seen the memorandum and either concur or [do not] concur."[7] *Id.* at 1. In the attached revised Memorandum for Record, Major Sibaja again described the claim at issue as "a claim on March 21[], 2004 . . . . [r]equest[ing] KWD 24,282.590 for damages to a Caterpillar 950E that was taken to Iraq and then returned to Kuwait." *Id.* at 2. Major Sibaja noted, however, that he had increased the "reasonable cost" of the damaged Caterpillar from KWD 11,200 to KWD 14,000. *Id.* As a result of that change, and again subtracting the lease fees overpayment of KWD 8320 described in Ms. Weinert's D&F and referenced in Major Sibaja's September 2005 Decision, Major Sibaja concluded that "[t]he total amount due the contractor is KWD 5,680." *Id.* Like the September 2005 Decision, the October 2005 Revised Decision stated that it was the "final decision of the Contracting Officer," and noted that any suit challenging the decision in this court had to be filed within one year of Uniglobe's receipt of the decision. *Id.* at 3.

---

[7]/ Major Sibaja also stated that "[t]he name of my replacement is Lieutenant Colonel Ray Strother," and provided Colonel Strother's e-mail address to Uniglobe. Def.'s Mot. Ex. G at 1.

On October 26, 2005, Ms. Quinto at Uniglobe e-mailed Colonel Strother stating that she had "received already the [f]inal determination for Contract No. 0442 which Major Rosiher Sibaja sent to me on 24th Oct[ober] 2005." Def.'s Supplemental Br. Ex. 2.  Thereafter, on February 5, 2006, Ms. Quinto e-mailed Colonel Strother "to confirm that [Uniglobe] agree[s] to the settlement as stated in the Memorandum for [R]ecord . . . dated August 30, 2005 [for a] total amount [of] [KWD] 5,680.000." Pl.'s Second Supplemental Br. Ex. B at 47.

### E.      Uniglobe's 2009 Consolidated Claim

Nearly four years later, on November 5, 2009, Uniglobe submitted to the Army what it characterizes as a "consolidated claim, which sought to amend, modify, bring together and update all prior claims" under the three contracts at issue in this suit (the 2009 Consolidated Claim).  Am. Compl. ¶ 30; *see id.* Ex. J. With respect to the 442 contract, the 2009 Consolidated Claim demanded lease fees for the two Caterpillars recovered from Camp Arifjan and Camp Virginia from the date of the Army's purported termination of the 442 contract (May 2003) to the dates on which the two Caterpillars were recovered (September and October 2003).  *Id.* Ex. J at 2.

## II.      Procedural History

Uniglobe filed a complaint in this court on April 6, 2010, seeking damages for the Army's alleged breach of its three contracts with Uniglobe.  With respect to the 442 contract, plaintiff alleged that it was entitled to damages for lease fees for the two Caterpillars recovered from Camp Arifjan and Camp Virginia from the date of the Army's purported termination of the 442 contract (May 2003) to the dates on which the two Caterpillars were recovered (September and October 2003). Plaintiff also sought damages for the costs of repairing the damaged Caterpillar that was recovered from Camp Virginia in October 2003.

Defendant filed a motion for partial dismissal pursuant to RCFC 12(b)(1) on June 7, 2010.  In that motion, the government requested dismissal of Uniglobe's claims arising from the government's alleged breach of the 442 contract (hereinafter, the 442 contract claims) because the government contended that those claims had been filed with the contracting officer more than six years after they

had accrued, and because Uniglobe filed suit in this court more than one year after receiving the contracting officer's final decision on those claims.[8]

In a published opinion issued September 27, 2012, the court granted the government's motion to dismiss Uniglobe's 442 contract claims. *See Uniglobe I*, 107 Fed. Cl. 423. In its opinion, the court found that Uniglobe had filed at least two separate written claims related to the 442 contract with the contracting officer: the 2004 Repair Claim and the 2009 Consolidated Claim. *See id.* at 432. In addition, the court noted that the documentation provided by plaintiff referred to "an even earlier claim seeking the payment of late lease fees for the Caterpillar construction vehicles" but that "[n]either of the parties provided a copy of the referenced claim or decision related to the late leasing fees." *Id.* at 432 n.15. Based on the record before it – which did not include Uniglobe's 2003 Lease Fees Claim, Ms. Weinert's January 29, 2004 D&F or February 23, 2004 Contract Modification, or Mr. Adolph's February 18, 2004 Legal Review – the court first concluded that the 2009 Consolidated Claim was untimely under the CDA's six-year presentment requirement set forth in § 7103(a) because Uniglobe had submitted that claim to the contracting officer more than six years after the claim had accrued. *Id.* at 432-34. Next, the court concluded that Uniglobe had received the contracting officer's final decision on the 2004 Repair Claim no later than October 23, 2005, and therefore that claim was untimely under the CDA's one-year statute of limitations set forth in § 7104(b)(3) because Uniglobe filed suit in this court more than four years later. *See id.* at 434-35.

On December 3, 2012, plaintiff filed a motion to amend its complaint for the purpose of correcting the jurisdictional deficiencies with respect to the 442 contract claims. The amendment also sought to add new factual allegations related to plaintiff's other claims as well as a new claim for breach of the implied duty of good faith and fair dealing. The court granted the motion to amend on March 28, 2013, and Uniglobe filed its amended complaint on April 4, 2013.

---

[8]/ The government initially sought to dismiss Uniglobe's *entire* complaint on the ground that Uniglobe had not met the requirements of the Reciprocity Act, 28 U.S.C. § 2502 (2012). The government subsequently filed a motion to withdraw its arguments based upon the Reciprocity Act, which the court granted. As a result, the government's motion for partial dismissal pertained only to Uniglobe's 442 contract claims.

Plaintiff's amended complaint, like its initial complaint, seeks, with respect to the 442 contract, damages for lease fees for the two Caterpillars recovered from Camp Arifjan and Camp Virginia from the date of the Army's purported termination of the 442 contract (May 2003) to the dates on which the two Caterpillars were recovered (September and October 2003), as well as the costs of repairing the damaged Caterpillar recovered from Camp Virginia.  Am. Compl. ¶¶ 87-114 (Count III).[9]  Plaintiff alleges in its amended complaint that it never received a valid final decision from the contracting officer with respect to any of its 442 contract claims.  In that regard, Uniglobe asserts that the only written decision issued by the contracting officer with respect to Uniglobe's 442 contract claims was Major Sibaja's October 2005 Revised Decision.[10]  Am. Compl. ¶ 15 & Ex. E.  Plaintiff contends that this decision "related **solely** to [Uniglobe's] 2004 Contract Repair Cost Claim," *id.* ¶ 16, and "was ineffective as it was provided to [Uniglobe] by electronic mail, rather than 'by certified mail, return receipt requested, or by any other method that provides evidence of receipt,' as required by [FAR] 33.211(b)," *id.* ¶ 17.  Accordingly, plaintiff asserts that its 442 contract claims were "deemed denied as a matter of law after sixty (60) days" and, consequently, the CDA's one-year statute of limitations never commenced with respect to those claims.  *Id.* ¶¶ 24-28.

The government filed a motion for partial dismissal of plaintiff's amended complaint under RCFC 12(b)(1) on April 22, 2013.  That motion, like the government's previous motion for partial dismissal, seeks to dismiss only Uniglobe's 442 contract claims.  Unlike the government's previous motion for partial dismissal, however, the government's pending motion is based solely on defendant's assertion that Uniglobe filed its lawsuit more than one year after receiving the contracting officer's final decision on its 442 contract claims.  *See*

---

[9]/  The amended complaint also includes an alternative claim for breach of the implied duty of good faith and fair dealing with respect to each of Uniglobe's contracts with the Army.  Am. Compl. ¶¶ 115-120 (Count IV).

[10]/  In its amended complaint, plaintiff alleges that "[o]n August 30, 2005, Major Rosiher Sibaja transmitted by electronic mail a Memorandum and Record relating to the 2004 442 Repair Cost Claim, which purports to be a final decision (the 'Final Decision')."  Am. Compl. ¶ 15.  The "Memorandum and Record" to which plaintiff refers, and which is attached as Exhibit E to the amended complaint, is identical to Major Sibaja's revised Memorandum for Record e-mailed to Ms. Quinto on October 23, 2005.  *Compare id.* Ex. E, *with* Def.'s Mot. Ex. G.

Def.'s Mot. at 7-10.  Plaintiff filed its response on June 3, 2013, and the government filed its reply on June 20, 2013.

In an order dated August 12, 2013, the court noted that the September 2005 Decision and October 2005 Revised Decision, both of which were attached as exhibits to defendant's motion, each referred to and purported to attach a "final decision" and "legal opinion" with respect to Uniglobe's claim for lease fees under the 442 contract but, in fact, omitted those attachments.  *See* Def.'s Mot. Ex. E at 2, Ex. G at 2.  The court therefore ordered the government to supplement the record to include the missing documents.

On September 20, 2013, defendant filed with the court a declaration prepared by Charles J. Wilder, II, Legal Counsel for the Army Contracting Command in Kuwait.  Mr. Wilder's declaration includes two attachments: Attachment 1 is Ms. Weinert's January 29, 2004 D&F, which Mr. Wilder asserts is the "final decision" on Uniglobe's claim for lease fees referenced in the September 2005 Decision and October 2005 Revised Decision; Attachment 2 is Mr. Adolph's February 18, 2004 Legal Review, which Mr. Wilder asserts is the "legal opinion" on Uniglobe's claim for lease fees.

In an order dated September 27, 2013, the court noted that the parties, in addition to submitting incomplete documents, had not sufficiently addressed the issue of whether – and, if so, when and how – Uniglobe received Attachment 1 and/or Attachment 2 to Mr. Wilder's declaration.  Additionally, the court noted that Uniglobe had not specifically stated in its briefs whether – and, if so, when and how – it received from the government *any* written correspondence or other documentation responding to Uniglobe's claim for lease fees under the 442 contract.  The court therefore ordered the parties to file supplemental briefing addressing these issues, and to support their assertions in that regard with documentary evidence and/or declarations of knowledgeable persons.

The government filed its supplemental brief on November 6, 2013 in which it asserted that "at the latest, the [Army] transmitted the D&F and the Legal Review to Uniglobe as an enclosure to the August 30, 2005 Memorandum for Record (MFR), which the Army sent to Uniglobe via e-mail on September 26, 2005, and again on October 23, 2005."  Def.'s Supplemental Br. at 1.  In support of this claim, the government relied upon Mr. Wilder's declaration, which the

government resubmitted with its supplemental brief, *id.* Ex. 1, as well as Ms. Quinto's October 26, 2005 e-mail in which she confirmed that she had received "the Final Determination for Contract No. 0442," *id.* Ex. 2.

Plaintiff, in its supplemental brief filed November 15, 2013, speculated that "[t]he only fair and logical inference from [the] record" is that Major Sibaja's September 2005 Decision "was never delivered to or received by Uniglobe." Pl.'s Supplemental Br. at 4. Furthermore, Uniglobe suggested that the court should "infer[] that Maj[or] Sibaja omitted the D&F and the Legal Review from his revised decision emailed on October 23[, 2005] because the express purpose of Maj[or] Sibaja's October 23[, 2005] email was to communicate his 'revision' to his first [Memorandum for Record] and not to reiterate the bases for the earlier [Memorandum for Record]." *Id.*

The court, in an order dated January 24, 2014, found Uniglobe's supplemental brief to be noncompliant with the court's September 27, 2013 order because plaintiff had failed to answer the court's simple factual questions and had failed to support its assertions with citations to any documentary evidence or declarations of knowledgeable persons. The court therefore ordered Uniglobe to submit a second supplemental brief that complied with the court's September 27, 2013 order.

Uniglobe filed a second supplemental brief on February 7, 2014, asserting again that it "never received Attachment 1 (the January 29, 2004 [D&F]) or Attachment 2 (the February 18, 2004 Legal Review)." Pl.'s Second Supplemental Br. at 1. As support for this claim, plaintiff submitted a declaration prepared by Dr. Jasem. In his declaration, Dr. Jasem states that he "reviewed the relevant documents in Uniglobe's possession . . . . [and] found no original or copy of the D&F or the Legal Review . . . in Uniglobe's records." *Id.* Ex. A (Jasem Decl.) ¶ 3. Dr. Jasem admits, however, that Uniglobe received Major Sibaja's September and October 2005 decisions, as well as the Contract Modification prepared by Ms. Weinert and e-mailed by Ms. Quinn on February 23, 2004. *Id.* ¶ 4 ("Uniglobe acknowledges receiving the two[-]page August 30, 2005 Memorandum [f]or Record by [Major] Rosiher Sibaja and the revised August 30, 2005 Memorandum [f]or Record by [Major] Rosiher Sibaja . . . ."), ¶ 7 ("I acknowledge receipt by Uniglobe of an email from Erin Quinn sent at about 3:44 PM on February 23,

14

2004, transmitting Modification P00001 to Contract DABM06-03-P-0442 ('Contract Modification') . . . .").

## DISCUSSION

## I.      Standard of Review under RCFC 12(b)(1)

The relevant issue in a motion to dismiss under RCFC 12(b)(1) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  In considering the issue of subject matter jurisdiction, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff.  *Scheuer*, 416 U.S. at 236; *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted).

Where the court's jurisdiction is challenged, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence and by presenting competent proof.  *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Reynolds*, 846 F.2d at 748 (citations omitted).  If the plaintiff fails to meet its burden, and jurisdiction is therefore found to be lacking, the court must dismiss the action.  RCFC 12(h)(3).

In considering a motion to dismiss for lack of subject matter jurisdiction which challenges the truth of jurisdictional facts alleged in the complaint, the court may make findings of fact pertinent to its jurisdiction.  *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citing *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999), and *Reynolds*, 846 F.2d at 747); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) ("In determining whether a motion to dismiss should be granted, the Claims Court may find it necessary to inquire into jurisdictional facts that are disputed.").  In making findings of fact pertinent to its jurisdiction, the court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including declarations or affidavits.  *Rocovich*, 933 F.2d at 994 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947), and *Reynolds*, 846 F.2d at 747).

## II.     The CDA's One-Year Statute of Limitations

The CDA contains a one-year statute of limitations that applies to appeals to this court from the final decisions of contracting officers.  Under 41 U.S.C. § 7104(b)(3), a contractor "shall file any action [challenging a contracting officer's final decision on the contractor's claim] within 12 months from the date of receipt of a contracting officer's decision."  Satisfaction of this one-year statute of limitations is a jurisdictional prerequisite to filing a CDA claim in this court.  *See* 41 U.S.C. § 7103(g) ("The contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter."); *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365-66 (Fed. Cir. 2002) ("Although characterized as a statute of limitations, the filing period[] established by . . . the CDA [is] jurisdictional in nature, for [it] operate[s] as [a] limit[] on the waiver of sovereign immunity by the Tucker Act, which otherwise entitles a contractor to sue the government in the Court of Federal Claims.") (citations and internal quotation marks omitted).

The one-year statute of limitations under § 7104(b)(3) does not begin to run, however, until the contractor has received from the contracting officer a final decision on its claim.  *E.g.*, *Int'l Air Response v. United States*, 302 F.3d 1363, 1366 n.2 (Fed. Cir. 2002) ("The one-year period within which to challenge a contracting officer's final decision in the Court of Federal Claims begins to run from the 'date of the receipt by the contractor of the decision.'" (quoting 41 U.S.C. § 609(a)(3), the predecessor to § 7104(b)(3))); *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed. Cir. 1991) ("Receipt is the 'critical event that starts the running of the limitations period.'" (quoting *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1577 (Fed. Cir. 1987))).

When a contracting officer fails to issue a final decision on a contractor's claim within the required time period – generally, sixty days after receipt of the claim – the claim is deemed denied for the purposes of seeking review in this court.  *See* 41 U.S.C. § 7103(f)(5); *see also* FAR 33.211(g).  A deemed denial does not trigger the running of the limitations period under § 7104(b)(3).  *Decker & Co. v. West*, 76 F.3d 1573, 1580 (Fed. Cir. 1996) (citing *Pathman*, 817 F.2d at 1578-79).

16

### III.   Analysis

In its motion for partial dismissal, defendant argues that this court lacks jurisdiction over Uniglobe's 442 contract claims because Uniglobe did not file suit in this court within one year of receiving the contracting officer's final decision with respect to those claims as required by § 7104(b)(3).  In evaluating whether Uniglobe satisfied the CDA's one-year statute of limitations with respect to its 442 contract claims, the court must determine:  (1) when Uniglobe submitted written claims to the contracting officer with respect to the 442 contract; (2) when Uniglobe received final decisions on those claims from the contracting officer; and (3) whether Uniglobe filed this suit within one year of receiving those final decisions.

### A.   Uniglobe's Written Claims under the 442 Contract

The court finds, at the outset, that Uniglobe filed at least three separate written claims with the contracting officer related to the 442 contract.  First, plaintiff filed a written claim on or about November 30, 2003.  That claim requested the payment of lease fees in the amount of KWD 29,313.33.  *See* Def.'s Mot. Ex. A.

Second, as the court previously found in *Uniglobe I*, plaintiff filed a written claim on March 21, 2004.  107 Fed. Cl. at 432.  That claim requested damages in the amount of KWD 24,282.59 to cover the cost of repairing the damaged Caterpillar that was recovered from Camp Virginia in October 2003.  *Id.*; Am. Compl. ¶ 14 & Ex. D; Def.'s Mot. Ex. D.  The 2004 Repair Claim did not seek damages for unpaid lease fees.

Third, plaintiff filed a written claim on November 5, 2009.  Am. Compl. ¶ 30 & Ex. J.  That claim "sought to amend, modify, bring together and update all prior claims" under Uniglobe's three contracts and demanded lease fees under the 442 contract for the two Caterpillars recovered from Camp Arifjan and Camp Virginia.  Am. Compl. ¶ 30; *see id.* Ex. J at 2.  As noted, the court has already held that the 2009 Consolidated Claim was untimely under § 7103(a), and therefore not within the court's jurisdiction, because Uniglobe submitted that claim to the contracting officer more than six years after the claim had accrued.  *Uniglobe I*,

107 Fed. Cl. at 432-34.  Plaintiff does not attempt to remedy this jurisdictional deficiency in its amended complaint, and the parties' briefs submitted in connection with defendant's motion for partial dismissal do not address the 2009 Consolidated Claim.  Accordingly, the court need not address the 2009 Consolidated Claim further.

Plaintiff argues that it submitted a fourth claim under the 442 contract. Specifically, on October 3, 2005, Dr. Jasem of Uniglobe provided Major Sibaja with a letter enclosing several invoices for lease fees under the 442 contract.  *See* Am. Compl. ¶ 18 & Ex. F; Pl.'s Resp. at 2, 7; *see also* Def.'s Mot. Ex. F.  These invoices, which Dr. Jasem described as "required documents for [Uniglobe's] claims," *see* Def.'s Mot. Ex. F at 1, comprised the same invoices that Uniglobe had submitted on November 30, 2003 plus one additional invoice demanding payment of KWD 48,800 in lease fees for five Caterpillars for a four-month period from June 1, 2003 to October 1, 2003, *see id.* at 2-15.  In his letter, Dr. Jasem described the additional invoice as "Complete Invoices for 5 units of Caterpillar (as per Invoice attached)."  *Id.* at 1.  Plaintiff asserts that Dr. Jasem's October 3, 2005 letter to Major Sibaja constituted an additional, separate, claim for lease fees under the 442 contract in the amount of KWD 48,800.  *See* Am. Compl. ¶ 18 & Ex. F at 2; Pl.'s Resp. at 2-3, 7.  The government responds that "Uniglobe's October 3, 2005 submission was not a new claim . . . . [b]ut rather . . . [merely] enclose[d] documents required to support [Uniglobe's] pending lease fees claim."  Def.'s Mot. at 8; *see also* Def.'s Reply at 2-3.

It is well-established that a single government contract may give rise to more than one CDA claim.  *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990).  Whether the contractor has presented a fragmented single claim or separate claims is determined by the operative facts.  *Id.*  "If the court will have to review the same or related evidence to make its decision, then only one claim exists. . . .  On the other hand, if the claims as presented to the [contracting officer] will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims exist."  *Id.*; *accord Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1312 (Fed. Cir. 2000) (citing *Placeway*, 920 F.2d at 907); *AAB Joint Venture v. United States*, 68 Fed. Cl. 363, 365 (2005) ("A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer.") (citations and internal quotation marks omitted).

Applying these authorities to the instant case, the court agrees with the government that Dr. Jasem's October 3, 2005 submission was not a new claim under the 442 contract. As noted, Dr. Jasem's letter enclosed, with one exception, the *very same* invoices that Uniglobe had submitted in its 2003 Lease Fees Claim. Therefore, Dr. Jasem's submission necessarily arose from essentially the same operative facts as Uniglobe's 2003 Lease Fees Claim. *See* Def.'s Mot. Ex. F at 2-15.

Dr. Jasem's submission of a new invoice requesting additional lease fees in the amount of KWD 48,800 did not change the operative facts underlying Uniglobe's claim for lease fees. The United States Court of Appeals for the Federal Circuit has recognized that an increase in the amount of a claim which is reasonably based on further information pertaining to damages does not necessarily alter the operative facts underlying the claim. *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 591 (Fed. Cir. 1987) (holding that an increase of the contractor's claim from $23,232.98 to $99,265.43 "did not change the fundamental character of the claim" but rather "was 'reasonably based on further information'" regarding the contractor's damages, *i.e.*, the inclusion of additional amounts resulting from "the nonpayment of the final invoice and the government's audit of the second year of the contract" (quoting *Tecom, Inc. v. United States*, 732 F.2d 935, 938 (Fed. Cir. 1984))). Likewise, this court and its predecessor have found the same set of operative facts where the contractor submits "additional evidence pertaining to damages to support the same factual claim." *AAB Joint Venture*, 68 Fed. Cl. at 365-66 (citing *J.F. Shea Co. v. United States*, 4 Cl. Ct. 46, 55 (1983)). Here, Dr. Jasem did not describe the additional invoice as a separate claim for lease fees but, instead, merely as one of several "required documents for [Uniglobe's] claims."[11] Def.'s Mot. Ex. F at 1. His October 3, 2005 submission therefore did not present a new claim for lease fees

---

[11]/ It is also worth noting that plaintiff, in its brief in opposition to defendant's initial motion for partial dismissal, likewise characterized the invoices attached to Dr. Jasem's October 3, 2005 letter as "additional documents . . . [for the Army] to consider before finalizing settlement based upon the findings in [Major Sibaja's] [d]etermination" – *not* as a new claim for lease fees under the 442 contract. Pl.'s Br. of Aug. 27, 2010, at 3. Uniglobe apparently now seeks to characterize these "additional documents" as a new claim under the 442 contract to avoid the jurisdictional holding of *Uniglobe I*.

under the 442 contract, but rather provided additional evidence in support of Uniglobe's 2003 Lease Fees Claim.

**B.     Uniglobe's Receipt of Written Decisions on Its 2003 Lease Fees Claim and 2004 Repair Claim**

It is undisputed that Ms. Weinert's January 29, 2004 D&F and February 23, 2004 Contract Modification set forth her findings and conclusions with respect to Uniglobe's 2003 Lease Fees Claim. *See* Def.'s Supplemental Br. at 1 & Ex. 1, ¶¶ 3-4, 6, 9; Pl.'s Supplemental Br. at 5 ("[I]t cannot be denied that the Army considered the D&F/Legal Review to constitute the contracting officer's final decision on Uniglobe's November 30, 2003 lease payment claim."). In addition, it is undisputed, and this court has already determined, that Major Sibaja's September 2005 Decision and October 2005 Revised Decision addressed Uniglobe's 2004 Repair Claim. *Uniglobe I*, 107 Fed. Cl. at 434-35.

Uniglobe nonetheless contends that it never received a valid final decision with respect to either its 2003 Lease Fees Claim or its 2004 Repair Claim, and therefore the limitations period under § 7104(b)(3) never commenced for those claims. *See* Am. Compl. ¶¶ 14-17, 24-28; Pl.'s Resp. at 2-8. In that regard, plaintiff first argues that Major Sibaja's September 2005 Decision and October 2005 Revised Decision are the 2003 Lease Fees Claim. *See* Am. Compl. ¶ 16; Pl.'s Resp. at 3, 6-8. Second, plaintiff contends that defendant has failed to demonstrate that Uniglobe actually received any written decision on its 442 contract claims. *See* Am. Compl. ¶ 17; Pl.'s Resp. at 6. Finally, Uniglobe asserts that Ms. Weinert's D&F and Contract Modification, as well as Major Sibaja's September and October 2005 decisions, are invalid because they did not comply with the requirements for final decisions set forth in FAR 33.211(a)(4). *See* Pl.'s Resp. at 4-6, 8. The court will address these arguments in turn.

**1.     The September 2005 Decision and October 2005 Revised Decision Addressed *Only* the 2004 Repair Claim, *Not* the 2003 Lease Fees Claim**

Plaintiff first argues that while Major Sibaja's September 2005 Decision and October 2005 Revised Decision decided Uniglobe's 2004 Repair Claim, they did

not decide Uniglobe's 2003 Lease Fees Claim. *See* Am. Compl. ¶ 16; Pl.'s Resp. at 3, 6-8. The government asserts, in response, that the September 2005 Decision and October 2005 Revised Decision addressed both the 2003 Lease Fees Claim and the 2004 Repair Claim. *See* Def.'s Mot. at 7-8; Def.'s Reply at 1-2, 4-7. In that regard, the government contends that the September 2005 Decision and October 2005 Revised Decision "reaffirmed" Ms. Weinert's findings and conclusions with respect to lease fees in her January 29, 2004 D&F and February 23, 2004 Contract Modification. Def.'s Reply at 5 (citing *England v. Sherman R. Smoot Corp.*, 388 F.3d 844 (Fed. Cir. 2004) (*Smoot*), and *Oman-Fischbach Int'l (JV) v. Pirie*, 276 F.3d 1380 (Fed. Cir. 2002)).

The court concludes that the September 2005 Decision and October 2005 Revised Decision do not constitute final decisions with respect to Uniglobe's 2003 Lease Fees Claim. By their very terms, these decisions responded only to Uniglobe's 2004 Repair Claim. Under sections titled "Description of Claim," each decision referred to the relevant claim as "a claim on March 21[], 2004 . . . . [r]equesting KWD 24,282.590 for damages to a Caterpillar 950E that was taken to Iraq and then returned to Kuwait." Def.'s Mot. Exs. E at 2, G at 2; *see also id.* Ex. E at 2 ("This claim is for damages sustained to one bucket loader, which was taken to Iraq and returned."). Although both decisions referred to and purported to enclose the contracting officer's "final decision and legal opinion" on Uniglobe's *previous* claim for lease fees, *see* Def.'s Mot. Exs. E at 2, G at 2, they did not themselves purport to resolve that previous claim.

The Federal Circuit's decisions in *Smoot* and *Oman-Fischbach* are of no help to defendant. In *Smoot*, the Federal Circuit rejected the so-called "*McMullan* presumption," under which, when "faced with a claim by a contractor for costs incurred as a result of a delay, and the government extended the period of contract performance, the [Armed Services] Board [of Contract Appeals] will invoke a presumption, subject to rebuttal, that the government was at fault for the delay." 388 F.3d at 851 (citing, *e.g.*, *Robert McMullan & Son, Inc.*, ASBCA No. 19023, 76-1 BCA ¶ 11,728 (*McMullan*)). At issue in *Smoot* were contract modifications by which the contracting officer had extended the contract completion date, and upon which the contractor based its unsuccessful assertion of the *McMullan* presumption. In addition to its decision regarding the substantive effect of the disputed contract modifications, and of significance to the case at hand, the Federal Circuit was called upon to determine whether those disputed modifications were,

21

in effect, "final decisions" under the CDA.  In that regard, the Federal Circuit held
that

> taken together, the modifications are indistinguishable
> from final decisions, save for the absence of a notice of
> the right to appeal.  Although they do not constitute a
> final decision allowing [the contractor] to appeal, they
> effectively became final with the deemed denial of the
> claim, and they are the only written decisions expressing
> the contracting officer's resolution of the dispute between
> the contractor and the government.

*Id.* at 857.  Thus, in *Smoot*, the Federal Circuit determined that although the
contract modifications, as originally issued, were inadequate to constitute a final
decision, where those modifications were the only written expression of the
contracting officer's dispute resolution *and* where the contractor subsequently
submitted a "deemed denial" appeal (showing a lack of prejudice from the absence
of an appeal notification), the modifications sufficed, at that point and under those
circumstances, to serve as a contracting officer final decision.

        Defendant characterizes *Oman-Fischbach*, the second case upon which it
relies, as holding that a contract modification became "part of" a subsequent final
decision "where a contracting officer issued the modification, the contractor then
resubmitted a claim, and the final decision re-affirmed the earlier modification."
Def.'s Reply at 5 (citing *Oman-Fischbach*, 276 F.3d at 1383).  However, the
scenario that defendant describes in *Oman-Fischbach* bears no resemblance to the
circumstances of this case.  To the extent that *Oman-Fischbach* has any
conceivable relevance to the instant case, it is only by virtue of the Federal
Circuit's passing reference to *Oman-Fischbach* in *Smoot*, where the court cited
*Oman-Fischbach* for the proposition that "final decisions themselves often refer to
. . . interim decisions."  388 F.3d at 857 (citing *Oman-Fischbach*, 276 F.3d at
1383).  Defendant relies upon this single sentence from *Smoot* to argue that the
September 2005 Decision and October 2005 Revised Decision became final
decisions with respect to Uniglobe's 2003 Lease Fees Claim merely by mentioning
the contracting officer's previous determination regarding the amount by which the
Army had overpaid Uniglobe for lease fees under the 442 contract.  *See* Def.'s
Reply at 5.

The government's attempts to frame the present case to resemble the facts in *Smoot* are useless.  In *Smoot*, the contracting officer issued contract modifications which contained all of the elements of a final decision except for the notice of a right to appeal.  As previously stated, upon the contractor's filing of a deemed denial appeal, the Federal Circuit held that those contract modifications, which the court likened to an interim decision, effectively became a final decision.  In the present case the circumstances are drastically different.  Here, two contracting officer final decisions on Uniglobe's 2004 Repair Claim made passing reference to the existence of a separate, previously issued final decision on Uniglobe's 2003 Lease Fees Claim.  Unlike the circumstances in *Smoot*, nothing akin to an interim decision was ever issued with regard to Uniglobe's 2003 Lease Fees Claim, and the fact that the final decisions on Uniglobe's 2004 Repair Claim made mention of the existence of a previously issued final decision on Uniglobe's 2003 Lease Fees Claim does not serve to convert the repair claim decisions into final decisions on the 2003 Lease Fees Claim as well.

The court therefore rejects defendant's reliance upon *Smoot* and *Oman-Fischbach*, and concludes that the September 2005 Decision and October 2005 Revised Decision constitute final decisions only with respect to Uniglobe's 2004 Repair Claim, not its 2003 Lease Fees Claim.

### 2. Uniglobe Received the September 2005 Decision and October 2005 Revised Decision by October 24, 2005, and Received the Contract Modification by February 23, 2004; Uniglobe Did Not Receive the D&F or Legal Review

Plaintiff next asserts that the government has failed to demonstrate Uniglobe's receipt of any written decision on the 2003 Lease Fees Claim or the 2004 Repair Claim.  *See* Am. Compl. ¶ 17; Pl.'s Resp. at 6; Pl.'s Supplemental Br. at 3-5; Pl.'s Second Supplemental Br. at 1 & Ex. A (Jasem Decl.) ¶ 3.

The CDA provides that a contracting officer "shall mail or otherwise furnish a copy" of his written decision to the contractor.  41 U.S.C. § 7103(d).  The Federal Circuit has interpreted receipt by the contractor to mean "'actual physical receipt'" of that decision by the contractor.  *Riley & Ephraim Constr. Co. v. United States*, 408 F.3d 1369, 1372 (Fed. Cir. 2005) (quoting *Borough of Alpine*, 923 F.2d

at 172); *see also Pathman*, 817 F.2d at 1577.  The government bears the burden of proving the contractor's receipt of a contracting officer's final decision.  *Riley & Ephriam*, 408 F.3d at 1372 (citation omitted).  That burden is satisfied if the government demonstrates "'objective indicia of receipt.'"  *Id.* (quoting *Borough of Alpine*, 923 F.2d at 172); *accord* FAR 33.211(b) (stating that "[t]he contracting officer shall furnish a copy of the decision to the contractor by certified mail, return receipt requested, *or by any other method that provides evidence of receipt*") (emphasis added).

The court has before it five decisional documents which are relevant to determining whether Uniglobe actually received a written decision on its 442 contract claims:  Major Sibaja's September and October 2005 decisions; Ms. Weinert's January 29, 2004 D&F; Mr. Adolph's February 18, 2004 Legal Review; and Ms. Weinert's February 23, 2004 Contract Modification.

### a.     Major Sibaja's Decisions

Although Uniglobe does not go so far as to assert that it never received either Major Sibaja's September 2005 Decision or his October 2005 Revised Decision,[12] it claims that these decisions were "ineffective" because they were sent to Uniglobe by e-mail rather than "by certified mail, return receipt requested, or by any other method that provides evidence of receipt" as required by FAR 33.211(b).  *See* Am. Compl. ¶ 17; Pl.'s Supplemental Br. at 3.  The government responds that "there is no issue but that Uniglobe received the [September 2005 Decision and October 2005 Revised Decision]" because "there [are] objective indicia of receipt."  Def.'s Mot. at 10.

The court concludes that defendant has presented sufficient evidence to demonstrate that Uniglobe received Major Sibaja's September and October 2005

---

[12]/ To the contrary, as previously noted, Dr. Jasem states in his declaration that "Uniglobe acknowledges receiving" both the September 2005 Decision and the October 2005 Revised Decision.  *See* Pl.'s Second Supplemental Br. Ex. A (Jasem Decl.) ¶ 4.  Uniglobe made a similar concession in its opposition to the government's previous motion for partial dismissal.  *See Uniglobe I*, 107 Fed. Cl. at 434 (noting that "Uniglobe does not contend that it never received [the September 2005 Decision and the October 2005 Revised Decision]").

decisions no later than October 24, 2005.  As previously noted, Major Sibaja stated in his September 26, 2005 transmittal e-mail to Ms. Quinto at Uniglobe that he "[i]ncluded . . . my Contracting Officer[']s Final Determination," and the "Attach" line of the e-mail listed a document titled "Contracting Officers Final Decision.doc."  Def.'s Mot. Ex. E at 1.  In his October 23, 2005 transmittal e-mail to Ms. Quinto, Major Sibaja referred to an attached "revision of claim DABM06-P-0442," and the "Attach" line of the e-mail again listed a document titled "Contracting Officers Final Decision.doc."  Def.'s Mot. Ex. G at 1.  In addition, on October 26, 2005, Ms. Quinto confirmed that she had received "the Final Determination for Contract No. 0442 which Major Rosiher Sibaja sent to me on 24th Oct[ober] 2005."  Def.'s Supplemental Br. Ex. 2.  Based on this evidence, the court concludes that the government has demonstrated objective indicia of Uniglobe's receipt of a written decision on its 2004 Repair Claim no later than October 24, 2005.[13]

### b.    The D&F and Legal Review

With regard to Ms. Weinert's January 29, 2004 D&F and Mr. Adolph's February 18, 2004 Legal Review, the government notes that Major Sibaja's September and October 2005 decisions each referenced an "enclosure," *see* Def.'s Supplemental Br. at 1 (citing Def.'s Mot. Exs. E at 3, G at 3), and surmises that the referenced enclosures must have included the D&F and Legal Review because Major Sibaja's decisions each referred to those documents and because Mr. Wilder asserted in his declaration that Army personnel located copies of those documents in proximity to copies of Major Sibaja's decisions in the Army's paper files, *see id.* & Ex. 1 (Wilder Decl.) ¶¶ 5-7.  Defendant therefore contends that Uniglobe received the D&F and Legal Review no later than October 2005.  *See id.* at 1.

_____

[13]/  In *Uniglobe I*, the court concluded that "Uniglobe received the contracting officer's final decision on its written claims [there, the 2004 Repair Claim] by October 23, 2005."  107 Fed. Cl. at 435.  However, the record before the court in *Uniglobe I* did not include the October 26, 2005 e-mail from Ms. Quinto to Colonel Strother confirming her receipt of "the Final Determination for Contract No. 0442 which Major Rosiher Sibaja sent to me on 24th Oct[ober] 2005."  Def.'s Supplemental Br. Ex. 2.  The record currently before the court reveals that Uniglobe received a final decision on the 2004 Repair Claim no later than October 24, 2005.  In any event, regardless of whether Uniglobe received a written decision on its 2004 Repair Claim by October 23, 2005 or October 24, 2005, its appeal from that decision would be untimely under § 7104(b)(3), provided that the decision was valid under the CDA and the FAR.  *See infra.*

25

Uniglobe is correct to point out, however, that none of this evidence demonstrates that the D&F and Legal Review were actually transmitted to and received by Uniglobe. *See* Pl.'s Supplemental Brief at 3-4. The fact that Major Sibaja's September and October 2005 decisions referred to a previous "final decision" on Uniglobe's claim for lease fees does not prove that Major Sibaja actually attached the referenced decision to his transmittal e-mails. To the contrary, as previously noted, Major Sibaja's transmittal e-mails purported to attach only *one* document titled "Contracting Officers Final Decision.doc." *See* Def.'s Mot. Exs. E at 1, G at 1. Nor does the fact that Army personnel located copies of the D&F and Legal Review in close proximity to copies of Major Sibaja's decisions in the Army's paper files establish that the D&F and Legal Review were actually sent to and received by Uniglobe.[14]

The government also relies, unpersuasively, on Ms. Quinto's October 26, 2005 e-mail confirming her receipt of "the Final Determination for Contract No. 0442 which Major Rosiher Sibaja sent to me on 24th Oct[ober] 2005." Def.'s Supplemental Br. at 2 & Ex. 2. Defendant does not assert, nor could it, that this e-mail confirmed Uniglobe's receipt of the D&F or Legal Review themselves; indeed, the e-mail does not reference either document. Instead, the government suggests that "if Uniglobe had not received the D&F and the Legal Review, one would expect that Uniglobe would have inquired about the content of those documents . . . given that [the September 2005 Decision and October 2005 Decision] referred to, and relied upon, those documents." *Id.* at 2. Defendant posits that "[t]he fact that Uniglobe did not indicate in [the October 26, 2005] e-mail that [Major Sibaja's decisions were] incomplete, or that the D&F and Legal Review relied upon by [Major Sibaja] were missing[,] strongly suggests that

---

[14]/  It would not be unreasonable to surmise that both the D&F and the Legal Review might have been prepared as internal, deliberative documents drafted to assist the contracting officer in reaching a determination on the contractor's claims or as a review to determine the legal sufficiency of such a decision prior to issuance. In that case, it would not have been at all unusual for these two documents to be co-located with Major Sibaja's decisions within the Army's files. If these were, in fact, internal documents, there is nothing to indicate that, as a matter of practice, such documents would have been released outside of the agency. Indeed, neither of these two documents is directed to Uniglobe, and the subject line of Mr. Adolph's Legal Review expressly states that it was intended "for [the] Contracting Officer." *See* Def.'s Supplemental Br. Ex. 1, Attach. 2 at 1.

Uniglobe had access to the D&F and the Legal Review by the time it sent the confirming e-mail." *Id.* The court rejects this "implication-by-silence" argument as mere speculation, which is plainly insufficient to meet the government's burden to demonstrate objective indicia of Uniglobe's receipt of Ms. Weinert's D&F or Mr. Adolph's Legal Review.

Because the government has failed to present any evidence that Uniglobe actually received the D&F or the Legal Review, the court concludes that neither document could have triggered the one-year statute of limitations under § 7104(b)(3).

### c.      The Contract Modification

With respect to Ms. Weinert's February 23, 2004 Contract Modification, although the government has not proffered any evidence of Uniglobe's receipt of that document, plaintiff has provided such evidence through its supplemental briefing. Specifically, as noted *supra*, plaintiff attached to its second supplemental brief a February 23, 2004 e-mail from Erin Quinn of the Army's contracting command to Uniglobe attaching a copy of the Contract Modification. *See* Pl.'s Second Supplemental Br. Ex. B at 18. Dr. Jasem "acknowledge[s] receipt" of that e-mail. *See id.* Ex. A (Jasem Decl.) ¶ 7. Based upon this evidence, the court finds objective indicia of Uniglobe's receipt of Ms. Weinert's February 23, 2004 Contract Modification no later than February 23, 2004.

Having found that Uniglobe received Ms. Weinert's February 23, 2004 Contract Modification no later than February 23, 2004, and received Major Sibaja's September and October 2005 decisions no later than October 24, 2005, the court next addresses plaintiff's argument that none of these documents constitute valid final decisions.

### 3.      The September 2005 Decision and October 2005 Revised Decision Were Valid Final Decisions on Uniglobe's 2004 Repair Claim, But the Contract Modification Was Not a Valid Final Decision on Uniglobe's 2003 Lease Fees Claim

Plaintiff's final argument is that the Contract Modification, September 2005 Decision, and October 2005 Revised Decision all failed to satisfy the applicable

requirements for contracting officers' final decisions, and therefore could not have triggered the running of the limitations period under § 7104(b)(3).[15]  *See* Pl.'s Resp. at 4-6, 8; Pl.'s Second Supplemental Br. Ex. A (Jasem Decl.) ¶ 12.

The CDA and the FAR set forth various substantive and procedural requirements for the decisions of contracting officers.  Under the CDA, a contracting officer's "final decision" must be written, must state the reasons for the decision, and must inform the contractor of the contractor's appeal rights.  41 U.S.C. § 7103(d)-(e).  The FAR elaborates upon the CDA's requirements for final decisions.  The FAR provision most relevant to the instant dispute is FAR 33.211(a), which provides that a contracting officer's final decision "shall include" the following provisions:

> (i) A description of the claim or dispute;
> (ii) A reference to the pertinent contract terms;
> (iii) A statement of the factual areas of agreement and disagreement;
> (iv) A statement of the contracting officer's decision, with supporting rationale;
> (v) Paragraphs substantially as follows:
>
> > "This is the final decision of the Contracting Officer.  You may appeal this decision to the agency board of contract appeals.  If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken.  The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

---

[15]/  Plaintiff also contends that the D&F failed to satisfy the requirements for contracting officers' final decisions.  *See* Pl.'s Resp. at 4-6.  The court need not address that issue, however, because the government has failed to meet its burden to demonstrate that Uniglobe actually received the D&F.  *See supra*.

> . . . .
>
> Instead of appealing to the agency board of
> contract appeals, you may bring an action directly
> in the United States Court of Federal Claims . . .
> within 12 months of the date you receive this
> decision[.]"
>
> (vi) Demand for payment prepared in accordance with
> [FAR] 32.604 and [FAR] 32.605 in all cases where the
> decision results in a finding that the contractor is
> indebted to the Government.

FAR 33.211(a)(4).

Failure to satisfy these requirements may render a contracting officer's decision on a CDA claim invalid.  *See, e.g.*, *Sharman Co. v. United States*, 2 F.3d 1564, 1570 (Fed. Cir. 1993) (holding that a letter from the contracting officer seeking repayment of progress payments was not a valid final decision under the CDA because it was not designated as a final decision), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc); *Atkins N. Am., Inc. v. United States*, 106 Fed. Cl. 491, 497 (2012) (*Atkins*) (citing cases).  An invalid contracting officer's decision does not trigger the one-year statute of limitations under § 7104(b)(3).  *E.g.*, *Pathman*, 817 F.2d at 1577-78. Accordingly, the court has the authority to rule on the validity of a contracting officer's decision as part of its jurisdictional inquiry under § 7104(b)(3).  *See Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (noting that a court "may declare a contracting officer's final decision invalid – for whatever reason"); *Atkins*, 106 Fed. Cl. at 498.

Although plaintiff does not dispute the fact that Ms. Weinert's Contract Modification and Major Sibaja's decisions contain conclusive determinations as to liability and damages with respect to Uniglobe's 2003 Lease Fees Claim and 2004 Repair Claim, respectively, plaintiff argues that these documents are not *valid* final decisions because they omitted certain provisions required by FAR 33.211(a)(4). As set forth below, the court concludes that Major Sibaja's decisions satisfied the requirements for final decisions under the CDA and the FAR, but the Contract Modification did not.

29

a.      **Major Sibaja's Decisions**

Plaintiff first contends that Major Sibaja's September and October 2005 decisions are not valid as final decisions on Uniglobe's 2004 Repair Claim because they failed to reference pertinent provisions of the 442 contract or factual areas of agreement and disagreement as required by FAR 33.211(a)(4)(ii)-(iii), and also failed to set forth the contracting officer's decision with supporting rationale as required by FAR 33.211(a)(4)(iv). *See* Pl.'s Resp. at 8. The government, unsurprisingly, disagrees, and argues that these decisions contained all of the information that is required by FAR 33.211(a)(4)(ii)-(iv). *See* Def.'s Reply at 7-9.

The court must agree with defendant that the September 2005 Decision and October 2005 Revised Decision complied with FAR 33.211(a)(4)(ii)-(iv). First, both decisions referenced FAR 52.228-8 under headings titled "Pertinent Contract Terms and Clauses." *See* Def.'s Mot. Exs. E at 2, G at 2. That FAR provision, titled "Liability and Insurance – Leased Motor Vehicles (May 1999)," is incorporated in full into the 442 contract and provides, in pertinent part, that "[t]he Government shall be responsible for loss of or damage to . . . [l]eased vehicles, except for (i) normal wear and tear and (ii) loss or damage caused by the negligence of the Contractor, its agents, or employees." FAR 52.228-8(a)(1); *see* Am. Compl. Ex. C at 7-8. The September 2005 Decision and October 2005 Revised Decision therefore complied with FAR 33.211(a)(4)(ii) because each decision referenced the provision of the 442 contract serving as the basis for the government's obligation to compensate Uniglobe for the cost of repairing damaged Caterpillars.

Second, the September 2005 Decision and October 2005 Revised Decision each set forth factual areas of agreement and disagreement with respect to Uniglobe's 2004 Repair Claim and also stated Major Sibaja's final decision with supporting rationale. *See* Def.'s Reply at 8 (citing Def.'s Mot. Exs. E at 2-3, G at 2). In the September 2005 Decision, Major Sibaja stated that Uniglobe requested KWD 24,282.59 "for damages to a Caterpillar 950E that was taken to Iraq and then returned to Kuwait," but that "[a] reasonable cost for this equipment is determined to be $40,000.00 which converts to KWD 11,200 at the current exchange rate." Def.'s Mot. Ex. E at 2-3. Based on this determination, and subtracting the lease fees overpayment of KWD 8320 referenced in Ms. Weinert's D&F, Major Sibaja

concluded that "[t]he total amount due the contractor is KWD 2,880." *Id.* at 3. The October 2005 Revised Decision contained virtually identical language, except that it increased the "reasonable cost" of repairing the damaged Caterpillar from KWD 11,200 to KWD 14,000, and concluded based on that revised amount (and again subtracting the lease fees overpayment referenced in Ms. Weinert's D&F) that "[t]he total amount due the contractor is KWD 5,680." Def.'s Mot. Ex. G at 2. Although Major Sibaja apparently neglected to set forth this information under headings titled "Areas of Agreement and Disagreement [B]etween Gov[ernmen]t and Contractor," he nevertheless provided such information elsewhere in his decisions. *See* Def.'s Mot. Exs. E at 2-3, G at 2. The September 2005 Decision and October 2005 Revised Decision therefore complied with FAR 33.211(a)(4)(iii) and FAR 33.211(a)(4)(iv).

Accordingly, the court concludes that Uniglobe received a valid final decision on its 2004 Repair Claim no later than October 24, 2005, and the one-year limitations period under § 7104(b)(3) therefore began to run on the 2004 Repair Claim as of October 24, 2005. Because Uniglobe did not file suit in this court until April 6, 2010, its claim for repair costs under the 442 contract is untimely under § 7104(b)(3) and must be dismissed for lack of subject matter jurisdiction.

### b.    The Contract Modification

Plaintiff next argues that Ms. Weinert's Contract Modification was invalid as a final decision on Uniglobe's 2003 Lease Fees Claim because it lacked language of finality and a notice of appeal rights as required by FAR 33.211(a)(4)(v), and lacked a demand for payment as required by FAR 33.211(a)(4)(vi). *See* Pl.'s Resp. at 4-6; Pl.'s Second Supplemental Br. Ex. A (Jasem Decl.) ¶ 12. The government again disagrees, arguing that whether the Contract Modification complied with FAR 33.211(a)(4) "is beside the point" because it was "reaffirmed" by, and effectively incorporated into, the September 2005 Decision and October 2005 Revised Decision. *See* Def.'s Reply at 4-5 (citing *Smoot*, 388 F.3d at 857, and *Oman-Fischbach*, 276 F.3d at 1383).

The court notes, preliminarily, that the issue of whether the Contract Modification itself constitutes a valid final decision on Uniglobe's 2003 Lease Fees Claim is not, as the government puts it, "beside the point." *See* Def.'s Reply

at 4.  To the contrary, the court must address that issue as part of its jurisdictional inquiry under § 7104(b)(3).[16]

Uniglobe is correct to point out that the Contract Modification lacked the standard indicia of a final decision.  The Contract Modification was not framed as a final decision with respect to Uniglobe's 2003 Lease Fees Claim; indeed, the Contract Modification employed the words "final decision" only once, in reference to a *previous* "final decision" on Uniglobe's "claim for payment for the lease of seven (7) bucket loaders."  *See* Def.'s Mot. Ex. C at 3; Pl.'s Second Supplemental Br. Ex. B at 21; *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267 (Fed. Cir. 1999) (noting that a final decision typically contains "standard language announcing that it constitutes a final decision" (citing *Placeway*, 920 F.2d at 907)). Nor did the Contract Modification list Uniglobe's appeal rights, as required for any final decision on a CDA claim by 41 U.S.C. § 7103(e) and FAR 33.211(a)(4)(v).

Furthermore, the Contract Modification lacked a demand for payment in accordance with FAR 33.211(a)(4)(vi).  That section of the FAR provides that a contracting officer's final decision must include a "[d]emand for payment prepared in accordance with [FAR] 32.604 and [FAR] 32.605 in all cases where the decision results in a finding that the contractor is indebted to the Government."  FAR 33.211(a)(4)(vi).  FAR 32.604 sets forth various required components of a demand for payment, including, *inter alia*,

> (1) A description of the debt, including the debt amount[;]
> (2) A distribution of the principal amount of the debt by line(s) of accounting . . . . [;]
> (3) The basis for and amount of any accrued interest or penalty[;]
> (4)(i) For debts resulting from specific contract terms

---

[16]/  As discussed *supra*, the court rejects defendant's argument, based upon the Federal Circuit's decisions in *Smoot* and *Oman-Fischbach*, that the Contract Modification effectively became "part of" the September 2005 Decision and October 2005 Revised Decision because those later decisions allegedly "reaffirmed" the reasoning set forth in the Contract Modification. *See* Def.'s Reply at 5.

..., a notification stating that payment should be made
promptly, and that interest is due in accordance with the
terms of the contract. . . . [;]
(ii) For all other contract debts, a notification stating that
any amounts not paid within 30 days from the date of the
demand for payment will bear interest. . . . [;]
(5) A statement advising the contractor . . . [t]o contact
the contracting officer if the contractor believes the debt
is invalid or the amount is incorrect[] and . . . [i]f the
contractor agrees, to remit a check payable to the
agency's payment office . . . . [; and]
(6) Notification that the payment office may initiate
procedures, in accordance with the applicable statutory
and regulatory requirements, to offset the debt against
any payments otherwise due the contractor.

FAR 32.604(b)(1)-(6).  The Contract Modification included the first of these
requirements insofar as it stated that "[a]s a result of the [KWD] 15,520
overpayment [of lease fees to Uniglobe], Uniglobe has a debt to the Government in
the amount of [KWD] 8,320 ([KWD] 15,520 – [KWD] 7,200 = [KWD] 8,320),"
and further stated that "[c]ollection action shall be initiated to recover the [KWD]
8,320 owed to the Government by Uniglobe."  *See* Def.'s Mot. Ex. C at 3; Pl.'s
Second Supplemental Br. Ex. B at 21.  However, the Contract Modification failed
to include any of the other required provisions set forth in FAR 32.604, and
therefore failed to include a demand for payment in accordance with FAR
33.211(a)(4)(vi).

       That the Contract Modification failed to satisfy certain requirements for final
decisions does not necessarily deprive that document of legal effect as a final
decision, however.  Under Federal Circuit precedent, a contracting officer's
decision that fails to technically comply with all of the statutory or regulatory
requirements for final decisions on CDA claims may nevertheless be valid and
therefore sufficient to trigger the CDA's statute of limitations.  Decisions which
address the validity of a technically deficient contracting officer decision focus
upon the extent to which the deficiencies prejudiced the contractor's ability to
perfect a timely appeal of the decision.  *See, e.g.*, *Fla. Dep't of Ins. v. United
States*, 81 F.3d 1093, 1098 (Fed. Cir. 1996) (holding that the contracting officer's

33

failure to explain the contractor's appeal rights in a notice of default termination was harmless error because the contractor had already received notice of its appeal rights and was able to appeal the decision); *Decker*, 76 F.3d at 1579-80 (holding that a contracting officer's final decision which omitted a notice of appeal rights was nevertheless effective with respect to triggering the CDA's one-year statute of limitations because the contractor was not prejudiced in its ability to prosecute a timely appeal); *Placeway*, 920 F.2d at 906-07 (holding, on a contractor's timely appeal from a contracting officer's adverse decision on the contractor's CDA claim, that the decision was "no less final because it failed to include boilerplate language usually present for the protection of the contractor," *i.e.*, language of finality and notice of appeal rights); *Philadelphia Regent Builders, Inc. v. United States*, 634 F.2d 569, 572-73 (Ct. Cl. 1980) (holding that a technically deficient notice of termination was nonetheless effective as a final decision of the contracting officer because the contractor was not harmed by the defects insofar as it had completed performance, the notice contained essential information, and the contractor was able to make a timely appeal of the contracting officer's decision).

As the Federal Circuit explained in *Decker*, the "focus" of the requirement to notify the contractor that a final decision has been rendered on its CDA claim, and to inform the contractor of its appeal rights with respect to that decision, "is the protection of the contractor." 76 F.3d at 1579; *accord Placeway*, 920 F.2d at 907. Where defects in a contracting officer's decision do not affect the contractor's ability to make an informed choice as to whether, and in what forum, it will pursue an appeal, the decision "continues to be . . . effective" for the purposes of triggering the applicable limitations period under the CDA. *Decker*, 76 F.3d at 1580. In contrast, where defects in a contracting officer's decision "actually prejudiced [the contractor's] ability to prosecute its timely appeal," such defects render the decision invalid and therefore insufficient to trigger the running of the applicable limitations period. *Id.* (citing *Pathman*, 817 F.2d at 1578-79).

Applying these authorities to this case, the court concludes that the aforementioned deficiencies in the Contract Modification were not harmless. Uniglobe filed its complaint in this court on April 6, 2010 – over six years after receiving Ms. Quinn's February 23, 2004 e-mail attaching the Contract Modification. Were the court to conclude that the Contract Modification constituted a valid final decision on Uniglobe's 2003 Lease Fees Claim, Uniglobe would unquestionably be prejudiced insofar as that claim would be barred by §

7104(b)(3).  The Contract Modification was therefore invalid and did not trigger the running of the limitations period under § 7104(b)(3) with respect to Uniglobe's 2003 Lease Fees Claim.

Because the government has failed to produce any evidence that Uniglobe received a valid final decision on its 2003 Lease Fees Claim, the court concludes, based upon this record, that the one-year limitations period under § 7104(b)(3) never began to run on that claim.  *See* 41 U.S.C. § 7103(f)(5); *Decker*, 76 F.3d at 1580 (citing *Pathman*, 817 F.2d at 1578-79).  Defendant's motion for partial dismissal must therefore be denied with respect to Uniglobe's claim for lease fees under the 442 contract.

## CONCLUSION

For the foregoing reasons, the court concludes that it lacks jurisdiction over Uniglobe's claim for repair costs under the 442 contract but does have jurisdiction over Uniglobe's claim for lease fees under the 442 contract.  Accordingly, it is hereby **ORDERED** that

(1)     Defendant's Partial Motion to Dismiss the Amended Complaint, filed April 22, 2013, is **GRANTED in part** as to the portions of Counts III and IV of the Amended Complaint which relate to plaintiff's claim for repair costs under Contract DABM06-03-P-0442;

(2)     Defendant's Partial Motion to Dismiss the Amended Complaint, filed April 22, 2013, is **DENIED in part** as to the portions of Counts III and IV of the Amended Complaint which relate to plaintiff's claim for lease fees under Contract DABM06-03-P-0442;

(3)     The parties are directed to **CONFER** to determine how they wish to proceed with respect to the remaining claims in the Amended Complaint and whether this case may be settled by the parties;[17] and

---

[17]/  The court encourages the parties to consider settlement discussions or ADR as the most efficient options for disposing of the remaining claims in this litigation.  The court notes that this case was originally assigned to alternative dispute resolution (ADR) Judge Bohdan A. (continued . . .)

(4)     The parties shall **FILE** a **Joint Status Report** on or before **May 2, 2014** proposing the next steps in this litigation.


<u>/s/Lynn J. Bush</u>
LYNN J. BUSH
Senior Judge

---

Futey, who has since retired.    Should the parties decide to pursue ADR, the undersigned will facilitate the assignment of this matter to an ADR judge.

36